FILED
2017 May-10 PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **COMMUNITY FOUNDATION OF NORTH ALABAMA,** | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO.: 1:17-cv-00715-KOB ) ) |
| **ANNISTON HMA LLC., et al.** | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This case stems from a dispute concerning assignment of a lease made between Community Foundation of North Alabama and Anniston HMA, which is fully guaranteed by Health Management Associates. The Foundation sued AHMA in the Circuit Court of Calhoun County, Alabama, seeking a declaratory judgment that the lease had already been assigned and asking for an injunction against AHMA proceeding to arbitration. The Foundation then moved to remand the case back to state court based on insufficient amount in controversy. (Doc. 4). Because the court finds it has subject matter jurisdiction over this matter, the court **DENIES** the Foundation's motion.

**I.     BACKGROUND**

The Foundation is a non-profit organization that operates as a testamentary trust whose purpose is to establish a hospital to serve the local community. In 2008, the Foundation and AHMA executed a 40-year lease of the hospital established by the trust. The rent per year under the lease was $600,000. HMA fully guaranteed the lease.

In November 2016, AHMA and The Health Care Authority of Anniston, which operates as

1

Regional Medical Center ("RMC"), began negotiations to structure a deal where AHMA would sell its assets, including the lease with the Foundation, to RMC. AHMA and RMC drafted an Asset Purchase Agreement to that effect, which was agreed to on March 3, 2017 and closed on May 1, 2017.

The lease specifies that assignments are not permitted unless specific conditions are satisfied. If the Foundation consents to the assignment, Section 17.4 allows the lease to be assigned without recourse against AHMA or HMA.[1] Section 17.5 allows the lease to be assigned without the Foundation's consent, so long as AHMA and HMA remained fully obligated under the lease.[2] Finally, Section 17.6 provides that if the Foundation declines to consent under Section 17.4, the question of the assignability of the lease could be submitted to arbitration.[3]

On April 5, 2017, AHMA and HMA asked the Foundation for consent to assign the lease to RMC. On April 27, the Foundation's Board met and declined the request. The next day, AHMA and HMA served the Foundation with a demand for arbitration under Section 17.6 of the lease. On May 3, the Foundation sued in Calhoun County Circuit Court seeking a declaratory judgment that the lease had already been assigned under Section 17.5 on May 1, 2017, when the APA closed, and requested an injunction preventing AHMA and HMA from pursuing arbitration. AHMA and HMA removed the action on the same day it was filed.

At the Foundation's request, the court set a hearing for May 4 on its request for emergency

---

1 Section 17.4 states: "This Lease shall be fully assignable, without recourse, by Lesee and such assignment shall relieve Lessee (and any guarantor of Lessee's obligations) of all its obligations under this Lease, provided that lessor consents in writing to such assignment, which consent shall not be unreasonably withheld, delayed, or conditioned." (Doc. 1-1 at 50).
2 Section 17.5 states: "This Lease shall be fully assignable by Lessee, provided that Lessee (and any guarantor of Lessee's obligations) shall remain fully obligated under all provisions of this Lease." (Doc. 1-1 at 50).
3 Section 17.6 states: "In the event Lessee seeks to assign its duties and obligations under this Lease in accordance with Section 17.4 and Lessor refuses to consent t assignment, Lessor and Lessee agree to submit the question of the assignability of this Lease to binding arbitration." (Doc. 1-1 at 50).

relief. Barely over half an hour before the hearing, the Foundation filed a motion to remand. (Doc. 4). Because the Foundation challenged the court's subject matter jurisdiction, the court acknowledged at the hearing that its jurisdiction had to be resolved before it could address the Foundation's request for emergency relief. Thus, the court set a briefing schedule on the motion to remand, which is now under submission.

The next day, AHMA and HMA offered the Foundation $75,001 for consent to assign the lease. The offer expired on May 8 without the Foundation accepting it.

## II. STANDARD OF REVIEW

Consistent with the limited nature of federal jurisdiction, the party seeking a federal venue must establish the federal venue's jurisdictional requirements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In the removal context, the removing defendant must establish the court's jurisdiction. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006). When the plaintiff has not specified the amount of damages in the complaint, the removing defendant must establish the jurisdictional amount by a preponderance of the evidence. *See Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 554 (2014).

The Foundation cites authority that a removing party must prove the amount in controversy to "a legal certainty." *See* (Doc. 4 at 3). However, the 2012 amendment to the removal procedure statute lowers that standard, even if the complaint contains a sum demanded in good faith. *See* 28 U.S.C. 1446(c)(2)(B) ("[R]emoval of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, *by the preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)"); *see also Dart Cherokee,* 135 S. Ct. at 554 ("This provision, added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), clarifies the procedure in order when a

defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."). And even prior to the amendment, when a sum was not requested in the complaint, the defendant bore the burden of demonstrating by a preponderance of evidence that the amount in controversy was met. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356–57 (11th Cir. 1996).

## III. DISCUSSION

AHMA and HMA removed this case on the basis of diversity jurisdiction. The sole question before the court is whether the value of the declaratory and injunctive relief the Foundation seeks exceeds $75,000, the jurisdictional threshold under 28 U.S.C. 1332(a).

In assessing the amount at issue, "the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective." *S. Florida Wellness, Inc. v. Allstate Ins. Co*., 745 F.3d 1312, 1315–16 (11th Cir. 2014) (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000)). Put differently, "the value of declaratory relief is the monetary value of the benefit that would flow to the plaintiff if the [relief it is seeking] were granted." *Id*. at 1316 (quotations omitted).

The first question the court must consider is what is being valued (i.e., what would be the effect of the relief the Foundation seeks). If the court awards the Foundation the relief it is seeking, AHMA and HMA would remain obligated under the lease despite its assignment to RMC. The Foundation would have two guarantors on the lease as opposed to none. If RMC defaulted on its obligations under the lease, the Foundation could make itself whole by recovering from AHMA and HMA. A judgment in the Foundation's favor would provide it with additional security throughout the remaining 31 years of the lease.

4

The court must now discern how to value the relief sought. Valuing a guaranty on a lease is not a simple proposition, as its worth depends on how likely the assignee is to default. The Foundation makes two arguments against the value of relief meeting the amount in controversy. The Foundation argues that the relief it seeks is "invaluable" and so does not satisfy the amount in controversy. (Doc. 8 at 3). If the court awards the Foundation the relief it seeks, the Foundation says it will not receive a "'measurable and certain' monetary value." *Id*.

The crack in the Foundation's reasoning is that it assumes that the Guaranty only has discernable value if a default occurs. *See* (Doc. 8 at 5) ("It could be worth millions; it could be worth zero. Or some amount in between, all depending on whether, when, and what stage of the Lease the assignee may default."). But the security itself has value as insurance against the assignee's default. Having two additional parties obligated under the lease increases its value to the lessor.

This difference distinguishes this case from *Alabama Power Co. v. Calhoun Power Co., LLC*, No. 2:12-CV-3798-WMA, 2012 WL 6755061 (N.D. Ala. Dec. 28, 2012), which the Foundation cites. In *Alabama Power Co.*, the relief conferred did not directly increase the value of the plaintiff's asset. Further, to the extent *Alabama Power Co.* requires an *actual* monetary benefit to be *realized* (instead of merely conferred), the court finds it unpersuasive. The amount in controversy for declaratory and injunctive relief is assessed by the value of the monetary benefit of the relief, not merely the cash consequences to the plaintiff. *See Florida Wellness, Inc.*, 745 F.3d at 315–16.

Granted, the value of the provided security cannot be calculated with decimal-level precision with the information before the court. But actuarial rigor is not required. *See S. Florida Wellness, Inc.*, 745 F.3d at 1316 ("While absolute certainty is neither attainable nor required, the

value of declaratory or injunctive relief must be sufficiently measurable and certain to satisfy the amount-in-controversy requirement.") (citations omitted); *Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 754 (11th Cir. 2010) ("[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it."). The burden is on the removing defendant to demonstrate that amount in controversy is more likely than not to exceed the jurisdiction threshold. *See Pretka*, 608 F.3d at 754.

The preponderance of the evidence before the court shows that the value of the relief the Foundation seeks exceeds $75,000. Over thirty years and thirteen million dollars remain on the lease. The final payment due under the lease will be $108,000; a surety on the lease would seem to be worth more $75,000. If the Foundation succeeds and the assignee defaults on the very last payment under the lease, AHMA or HMA would have to pay the Foundation more than $75,000

Even if the amount in controversy were not established by the lease itself, the Foundation's own actions confirm that the amount in controversy exceeds $75,000. The Foundation rejected an offer to settle this case for more than the required amount in controversy. True, because "[t]here are several reasons why a plaintiff" would not stipulate to seeking $75,000 or less, "refusal to stipulate *standing alone* does not satisfy [the defendant's] burden of proof on the jurisdictional issue." *Williams*, 269 F.3d at 1320 (emphasis added). But the court is not basing its decision *solely* on the Foundation's refusal of AHMA and HMA's proposed settlement. The Foundation's decision only confirms what the terms of the lease suggest—the value for the Foundation of having AHMA and HMA's guaranty exceeds $75,000.

A settlement offer may not settle a dispute over the amount in controversy, but "it counts for something." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). Here, the offer is illuminating. The Foundation has merely cited *Williams*' observation that a plaintiff could have its

reasons for refusing to stipulate, but it has not enlightened the court what those reasons might be here. After examining the record, the only possible inference that can be drawn from the Foundation's decision is that it values the relief it seeks at *more* than $75,000.

Simple logic compels this conclusion. The Foundation does not seriously argue that the relief it seeks lacks a monetary value. Rather, the Foundation argues that the relief is "invaluable" in the sense that the relief is incapable of having a certain sum ascribed to it. So the relief is not invaluable because it is unique and not susceptible to having a price tag fixed to it; the relief is invaluable because it is difficult to value. The court notes that in its reply brief, AHMA does mention it "specially contracted" for the particular assignment provisions, but the purpose of the bargaining was a financial one—"to provide a safety net to protect the revenue flow from the lease." (Doc 8 at 3).

The court is not persuaded that *Keach v. Poole*, 2013 WL 441082, (S.D. Ala. Feb. 5, 2013), provides instructive guidance to valuing the amount in controversy in this case. In *Keach*, "the plaintiff ha[d] not requested a declaration that he is not required to satisfy the debt." *Id*. at *2 n.2. But here, the effect of the declaratory judgment would be that AHMA would be obligated to secure the debt. Granted, an obligation to satisfy a debt is different from being called upon to do so. But that factual difference renders *Keach* inapposite.

As previously mentioned, what the court is valuing is AHMA and HMA's guaranty on the lease. The value of the guaranty is measured by the terms of the lease and the risk of the assignee's default. After considering both of those components, the Foundation declined to consent to assignment of the lease. Notably, the Foundation cited RMC's ability to perform its obligations under the lease as the reason for withholding its consent *after* having reviewed the pertinent financial information. *See* (Doc. 1-1 at 123).

7

The Foundation is correct that the *eventual benefit* conferred upon it by AHMA and HMA's guaranty is unknown. But the *current value* must exceed $75,000. Otherwise, the Foundation would have expeditiously accepted AHMA and HMA's offer to settle. Put differently, while the Foundation argues that the eventual value of the guaranty might be zero, it must consider that an unlikely outcome, or at least sufficiently unlikely as to justify declining $75,001 for its consent to assignment without recourse against AHMA and HMA. And that confirms the current value to the Foundation of the guaranty exceeds the amount in controversy.

The Foundation claims this settlement offer is an improper attempt by AHMA and HMA to manufacture evidence to correct a facially deficient removal. However, evidence attached to an opposition to a motion to remand is properly considered in deciding whether a court has subject matter jurisdiction after a removal. *See Pretka*, 608 F.3d at 774 ("For these reasons, the jurisdictional evidence . . . attached to its opposition to remand should not have been excluded merely because it was submitted in response to the plaintiffs' motion to remand."). And the evidence AHMA and HMA submitted is probative of the amount in controversy at the time of removal, making it proper for this court to consider the additional evidence. Although the offer came two days after the case was removed, nothing suggests that the value of the relief sought increased from under the threshold to over it in those forty-eight hours.

IV. **CONCLUSION**

Because the court finds AHMA and HMA have demonstrated by a preponderance of the evidence that the amount in controversy exceeds $75,000, the court **DENIES** the Foundation's motion to remand. (Doc. 4).

**DONE** and **ORDERED** this the 10th day of May, 2017.

_____
KARON OWEN BOWDRE
 CHIEF UNITED STATES DISTRICT JUDGE